KENNETH S. HIXSON, Judge
Appellant Jason Michael Hoyle appeals after he was convicted by a Pulaski County Circuit Court jury of rape. He was sentenced as a habitual offender to serve 720 months' imprisonment. On appeal, appellant does not contest the sufficiency of the evidence. Rather, appellant's sole argument is that the trial court abused its discretion in excluding the testimony of two rebuttal witnesses for the defense. We affirm.
Appellant was arrested and charged by felony information with rape in violation of Arkansas Code Annotated section 5-14-103(a)(1) (Repl. 2016). The State further alleged that appellant's sentence should be increased as provided in Arkansas Code Annotated section 5-4-501(b) because he had been previously convicted of four or more felonies. On February 1, 2017, the State filed its discovery motion specifically requesting that the defense provide the names and addresses of any person the defense intended to call as a witness at trial. A jury trial was held on September 26-27, 2017.
In a pretrial hearing on the first day of trial, the State informed the trial court that the defense had provided it with the names of two witnesses the day before trial. The trial court ruled that their testimony would be excluded in appellant's case-in-chief because providing names on the eve of trial was insufficient and that the State did not have an adequate amount of time to talk with the witnesses. The defense did not object or offer any reason for why it had failed to provide the names earlier.
*255 Casey Ball testified at trial that while she was waiting at her children's bus stop on December 8, 2016, appellant, whom she had not met before, approached her and told her that he had some children's toys that he wanted to give away to someone who had kids. Appellant told her that he would leave them on his front porch if she wanted to pick them up while he was gone. Later that day, Ball went to appellant's home with her children at the time he told her that he would be away. However, she found that appellant was at his home and that the front door had been left open. Her children saw the toys on the porch and in the living room and ran to play with them. Ball explained that she went into appellant's home and that he showed her around his trailer. Ball testified that when she heard her son crying and attempted to leave to attend to him, appellant grabbed her, pushed her onto his bed, and raped her. She testified that she did not scream because she did not want her children to come into his bedroom. After she returned to her home with her children, Ball called her sister-in-law, who told her to call the police. Ball testified that she was taken to the hospital and that the hospital prepared a rape kit.
Officer Leasha Rice testified that she responded to Ball's call to the police. When she arrived, Ball was crying and shaking. Ball gave Rice a description of appellant and the exact location of his residence. Employees from the Arkansas State Crime Laboratory confirmed that the semen found on a vaginal swab and various pieces of Ball's clothing was consistent with appellant's DNA.
Officer Mitchell Zimmerman testified that he went to appellant's home and subsequently arrested him. At that time, appellant admitted that Ball had been to his home and stated that Ball had wanted him to "shower with her." Officer Zimmerman further testified that appellant later told him that the only thing Ball and appellant did was kiss and "rub up on each other" on the bed.
On the morning of the second day at trial and outside the presence of the jury, defense counsel announced that he wished to call Meagan Conners and Jimmy Sandefur strictly as rebuttal witnesses.[1] Defense counsel argued that rebuttal witnesses were not required to be disclosed ahead of time and that he would restrict his questions to rebuttal information only. The State objected and argued that the defense was calling the witnesses for impeachment purposes-not as true rebuttal witnesses. Defense counsel responded that the testimony was "impeaching rebuttal" that he would not have needed to produce until after Ball testified. The trial court commented that it seemed as though the defense was "trying to find a backdoor way to get witnesses that [it] didn't disclose to the State." The trial court initially took the matter under advisement but later denied the request. In doing so, the trial court explained that if it had used the defense's theory to define a rebuttal witness, every defense witness would be considered a rebuttal witness, and "that's not true rebuttal."
Therefore, defense counsel proffered the testimony of Jimmy Sandefur and Meagan Conners to preserve the issue for appeal. Sandefur testified that he had seen Ball leave appellant's trailer on the day of the incident. According to him, she appeared to be walking normally and did not seem to be upset. Conners testified that Ball had personally visited her the evening of the incident. At that time, Ball admitted to her *256 that she had sex with appellant earlier that day. Conners additionally testified that Ball did not appear to be distraught or upset.
After the State rested and the trial court denied appellant's motion for directed verdict, appellant did not provide any witness testimony on his behalf. The jury found appellant guilty, and appellant was sentenced to serve 720 months' imprisonment as a habitual offender. This appeal followed.
On appeal, appellant argues that the trial court abused its discretion in excluding the testimony of two rebuttal witnesses for the defense. Matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court. McEwing v. State , 366 Ark. 456, 237 S.W.3d 43 (2006). We will not reverse such a ruling absent an abuse of that discretion; nor will we reverse absent a showing of prejudice, as prejudice is not presumed. Id.
Arkansas Rule of Criminal Procedure 18.3 (2017) provides the applicable discovery rule in criminal cases:
Subject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.
Our supreme court has held that the rule applies with equal force to testimony offered in support of a general-denial defense and testimony offered to support an affirmative defense. Weaver v. State , 290 Ark. 556, 720 S.W.2d 905 (1986). Sanctions by the trial court for failure to adhere to discovery rules include granting a continuance, excluding the evidence, or ordering the discovery. Ark. R. Crim. P. 19.7. Discovery in criminal cases, within constitutional limitations, must be a two-way street. Mitchell v. State , 306 Ark. 464, 816 S.W.2d 566 (1991). This interpretation promotes fairness by allowing both sides the opportunity to full pretrial preparation, preventing surprise at trial, and avoiding unnecessary delays during the trial. Id.
In the instant case and without any objection, the trial court properly found that appellant's failure to comply with the discovery motion prejudiced the State and prohibited appellant from presenting these witnesses in his case-in-chief. Without the names and addresses of appellant's witnesses, the State could not exercise its right to obtain information questioning the witnesses' credibility. Id. Further, appellant should have known the necessity of the witnesses' testimony long before the eve of trial, and appellant offered no excuse for his failure to disclose the witnesses to the State. See Hardaway v. State , 2011 Ark. App. 99 ; Washington v. State , 2010 Ark. App. 596, 377 S.W.3d 518.
Appellant's attempt at trial and now on appeal to characterize his witnesses as rebuttal witnesses is unavailing. In Mitchell , our supreme court rejected a similar argument. There, the defense attempted to offer the testimony of six witnesses as "rebuttal witnesses" after the trial court had excluded their testimony as a sanction for the defense's failure to comply with the State's discovery request for the names and addresses of the defense witnesses who would testify at trial pursuant to Rule 18.3. Our supreme court acknowledged that Mitchell was attempting to characterize the witnesses as "rebuttal witnesses" in an effort to bring his witnesses within the narrow exception to Rule 18.3 that it had previously recognized in Weaver , supra. Genuine rebuttal witnesses need not be disclosed before trial because neither the defense nor the State necessarily *257 knows in advance of the need for such rebuttal testimony. Id. However, in Mitchell , the defense had planned to use the witnesses in his case-in-chief. Mitchell, supra. Since Mitchell knew in advance of the need for the witnesses' testimony, our supreme court held that the trial court did not err in refusing to give Mitchell the benefit of the rebuttal-witness exception to the discovery rule. Id.
Similarly, here, appellant knew in advance the need for the witnesses' testimony and had planned to use the witnesses in his case-in-chief until the trial court excluded their testimony as a discovery sanction. Appellant does not specifically identify anything about Ball's testimony of which he was not aware or could not have anticipated. The proffered testimony further shows that appellant intended to use Conners's and Sandefur's testimony to counter or impeach Ball's testimony about the events in the wake of having been raped by appellant. However, the mere fact that a defense witness may contradict a State witness does not make the witness a true rebuttal witness. Therefore, we cannot say under these facts that the trial court abused its discretion in refusing to give appellant the benefit of the rebuttal-witness exception to the discovery rule.
Affirmed.
Glover and Vaught, JJ., agree.

These were the same witnesses who the trial court had already ruled would be excluded from the defense's case-in-chief as a discovery sanction.